**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**ROBERTO M.,**

        **Plaintiff,**

                                  **Case No. 2:19-cv-8326**
    **v.**                            **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

**<u>OPINION AND ORDER</u>**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Roberto M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Acting Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On February 4, 2014, Plaintiff filed an application for benefits, alleging that he has been disabled since January 1, 2013. R. 53, 64, 137–38. The application was denied initially and upon reconsideration. R. 80–84, 86–88. Plaintiff sought a *de novo* hearing before an administrative

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

law judge. R. 89−90. Administrative Law Judge Leonard Olasch ("ALJ Olarsch") held a hearing on April 14, 2016, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 35−52. In a decision dated May 20, 2016, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 1, 2013, the alleged disability onset date, through the date of that decision. R. 16−33 ("ALJ Olarsch's 2016 Decision"). That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on June 14, 2017. R. 1−6.

Plaintiff timely filed an appeal to ALJ Olarsch's 2016 Decision pursuant to 42 U.S.C. § 405(g). 540−42. On December 15, 2017, United States District Judge Stanley R. Chesler signed a Consent Order reversing and remanding the action for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g). R. 508−09. *M*[.] *v. Berryhill*, 2:17-cv-05749 (D.N.J. Dec. 15, 2017). On April 13, 2018, and acting pursuant to that order of remand, the Appeals Council vacated ALJ Olarsch's 2016 Decision and remanded the matter to an Administrative Law Judge for resolution of the following issue:

> • The Administrative Law Judge found the claimant had the residual functional capacity to perform a reduced range of unskilled light work, including that the claimant could stand/and or walk up to four hours (Finding No. 5). Based on the vocational expert's testimony, the Administrative Law Judge relied on a framework of medical vocational Rules 202.21 and 202.14 to find that the claimant could perform a significant number of sedentary jobs in the national economy (Decision, pages 10-11). However, the vocational expert only identified sedentary unskilled positions and did not clarify whether there were additional unskilled light positions available within the claimant's residual functional capacity (Hearing Transcript at pages 50-51). Accordingly, it is unclear whether the claimant's limitations have eroded the occupational base of light work, such that the decision was required to consider the sedentary grid rules in evaluating whether the claimant could perform a significant number of jobs at Step 5.

> On remand, the Administrative Law Judge will:

> • Obtain supplemental evidence from a vocational expert to clarify the effect of the

assessed limitations on the claimant's occupational base (Social Security Rulings 83-12, 83-14, 85-15, and/or 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and the information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision.

R. 499−500.

On July 25, 2018, ALJ Olarsch held a second administrative hearing, at which Plaintiff, who was again represented by counsel, testified, as did a vocational expert. R. 510−39. In a decision dated December 5, 2018, a different Administrative Law Judge, Kenneth Ayers ("ALJ Ayers"),[2] concluded that Plaintiff has not been under a disability from May 12, 2015, Plaintiff's amended disability onset date,[3] through the date of the decision. R. 478−91 ("ALJ Ayers' 2018 decision"). Plaintiff did not file exceptions to ALJ Ayers' 2018 decision and the Appeals Council did not assume jurisdiction, making ALJ Ayers' 2018 decision the final agency decision. 20 C.F.R. § 404.984(c)−(d). Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On February 23, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

---

[2] "The case was previously assigned to Administrative Law Judge Leonard Olarsch. However, due to Judge Olarsch's unavailability, this case has been re-assigned to the undersigned [ALJ Ayers] in accordance with Agency policy." R. 478.

[3] Plaintiff, through his attorney at the second administrative hearing on July 25, 2018, amended the alleged disability onset date from January 1, 2013, to May 12, 2015, which was the date on which Plaintiff turned 50 years old. R. 479, 514−15.

Procedure. ECF No. 22.[4] On February 24, 2021, the case was reassigned to the undersigned. ECF

No. 23. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

No. 17-2309 , 2018 WL 1509091, at \*4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.

Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018

WL 1509091, at \*4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at \*4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at \*3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at \*4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at \*4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISIONS AND APPELLATE ISSUES

### A.    ALJ Olarsch's 2016 Decision

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. R. 21. At step one, ALJ Olarsch found that Plaintiff had not engaged in substantial gainful activity between January 31, 2013, his original alleged disability onset date, and the date of ALJ Olarsch's 2016 Decision, May 20, 2016. R. 21.

At step two, ALJ Olarsch found that Plaintiff suffered from the following severe impairments: right leg disorder, panic disorder, depression, fatty liver disorder, vertigo, and obesity. R. 21. ALJ Olarsch also found that Plaintiff's history of diabetes mellitus and hypertension were not severe impairments. R. 21–22.

At step three, ALJ Olarsch found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 22–24. In making this finding, ALJ Olarsch specifically considered, *inter alia*, Listing 12.04

(addressing, at the time of ALJ Olarsch's 2016 decision, affective disorders) and Listing 12.06

(addressing, at the time of ALJ Olarsch's 2016 decision, anxiety-related disorders), finding that

Plaintiff had mild restrictions or difficulties in his activities of daily living and in his ability to

maintain concentration, persistence, or pace, and moderate difficulties or limitations in his social

functioning ability, with no episodes of decompensation of extended duration. R. 22−24.

At step four, ALJ Olarsch found that Plaintiff had the RFC to perform light work subject

to various additional limitations, including, *inter alia*, with limitations to unskilled work and only

occasional interaction with the general public. R. 24−27. ALJ Olarsch also found that this RFC

did not permit the performance of Plaintiff's past relevant work as a customer complaint clerk

and warehouse supervisor. R. 27.

At step five, ALJ Olarsch found that a significant number of jobs−*i.e.*, approximately

34,000 jobs as a surveillance system monitor; approximately 40,000 jobs as a final assembler;

approximately 50,000 jobs as a polisher, copper eye glass frames−existed in the national

economy and could be performed by an individual with Plaintiff's vocational profile and RFC.

R. 28−29. ALJ Olarsch therefore concluded that Plaintiff was not disabled within the meaning of

the Social Security Act from January 1, 2013, Plaintiff's original alleged disability onset date,

through the date of ALJ Olarsch's 2016 Decision, May 20, 2016. R. 29.

**B.     ALJ Ayers' 2018 Decision**

Plaintiff was 50 years old on his amended alleged disability onset date, May 12, 2015. R.

53−54 (reflecting Plaintiff's birth date of May 12, 1965). Plaintiff met the insured status

requirements of the Social Security Act through December 31, 2018. R. 481. At step one, ALJ

Ayers found that Plaintiff had not engaged in substantial gainful activity between May 12, 2015,

the amended alleged disability onset date, and the date of ALJ Ayers' 2018 Decision, December 5, 2018. *Id.*

At step two, ALJ Ayers found that Plaintiff suffered from the following severe impairments: history of chronic venous insufficiency and varicose veins of the right lower extremity, lumbar degenerative disc disease, and obesity. *Id.* ALJ Ayers also found that Plaintiff's diagnosed diabetes mellitus, hypertension, hypothyroidism, high cholesterol (hyperlipidemia), history of vertigo and fatty/enlarged liver, and the medically determinable mental impairments of depression and anxiety/panic disorder were not severe impairments. R. 482–84.

At step three, ALJ Ayers found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 484–85.

At step four, ALJ Ayers found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 485–90. ALJ Ayers also found that this RFC permitted the performance of Plaintiff's past relevant work as a customer service representative supervisor. R. 490–91. ALJ Ayers therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 12, 2015, Plaintiff's amended alleged disability onset date, through the date of ALJ Ayers' 2018 Decision, December 5, 2018. R. 491.

C.   **Appellate Issues**

Plaintiff disagrees with ALJ Ayers' findings at step four and asks that the decision of the Acting Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 27; *Plaintiff's Reply Brief,* ECF No. 29. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the

entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 28.

## IV.   DISCUSSION

### A.   RFC

Plaintiff argues that ALJ Ayers erred in making his mental RFC determination because the ALJ failed to hire a consultative examiner. *Plaintiff's Memorandum of Law*, ECF No. 27, pp. 10−16; *Plaintiff's Reply Brief*, ECF No. 29, pp. 1−3. Plaintiff's argument is not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, ALJ Ayers determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can occasionally engage in postural maneuvers except for balancing, kneeling, and crawling, which the claimant can engage in frequently. In addition, the claimant is capable of following multi-step directions.

R. 485. In making this determination, ALJ Ayers detailed the record evidence, including, *inter alia*, Plaintiff's testimony that he experiences anxiety attacks in crowded places, R. 486, as well as other evidence of Plaintiff's mental impairments, reasoning as follows:

> Finally, with respect to the claimant's mental impairments, the undersigned has given great weight to the opinions of State agency psychological consultants John Garrison, Ph.D., and Pamela Foley, Ph.D., who reviewed the record evidence in May 2014 and July 2014, and concluded that the claimant's mental impairments resulted in no more than mild functional limitations and were therefore non-severe (Ex. 2A, 4A). The undersigned has also given great weight to the opinion of consultative examiner Marc Friedman, Ph.D., who examined the claimant in May 2014, and concluded that the claimant remained capable of comprehending and following multistep directions (Ex. 5F). Although the [sic] these opinions were all issued prior to the claimant's amended alleged disability onset date, as discussed under Finding 3 of this decision, the claimant has had minimal psychological treatment, consisting of just three medication management appointments since that time. Given the lack of any consistent, documented psychological treatment, and the largely normal findings noted in those few records, the record does not support any greater mental functional limitations than these consultants have concluded. The undersigned has included a statement confirming and clarifying that the claimant remains capable of both understanding and following multistep instructions, as opined by Dr. Friedman, into the claimant's residual functional capacity assessment consistent with no greater than mild mental function limitations.

R. 490. ALJ Ayers specifically incorporated into his RFC determination his earlier consideration of Plaintiff's mental impairments:

> With respect to the claimant's alleged anxiety and affective disorders, in May 2014, one year prior to the claimant's amended alleged disability onset date, the claimant attended a consultative examination with psychologist Marc Friedman, Ph.D., at the request of the Social Security Administration (Ex. 5F). At the conclusion of that interview, Dr. Friedman opined the following:
>
> > *Based on the claimant's report, as well as on observations made during the interview, I would conclude that he is showing symptoms of the panic*

*disorder and a persistent depressive disorder. During the interview he was able to communicate clearly and he was able to follow the topic of a conversation. He was able to comprehend and follow multistep directions. His social interaction skills were adequate. Long-term, short-term and working memory were all adequate (Ex. 5F/3).*

After extensive neurologic workups by treating neurologists Michael Brand, D.O., and Nilaya Bhawsar, D.O., which were all essentially normal, Dr. Bhawswar diagnosed the claimant with a panic disorder without agoraphobia in September 2014, noting that the claimant "admits to being a nervous person in general as well as feeling depressed." Dr. Bhawsar recommended that that claimant start being prescribed the psychotropic medication Lexapro (escitalopram) and started being followed by psychiatrist at that time (Ex. 19F/75). As of October 2014, the claimant was prescribed the psychotropic medications clonazepam and escitalopram for his anxiety and affective disorders (Ex. 11F/8). However, there is little evidence of continuing treatment aside from medications.

The lcaimant's [sic] next documented psychological appointment, was not until February 2016, nine months after his amended alleged disability onset date. During that medication management appointment, the claimant continued to be prescribed the same psychotropic medications at the same stable dosages (Ex. 14F/1). In addition, upon mental status examination at that time, by treating psychiatric nurse Kathleen Prendergast, APN, the claimant was observed to be casually dressed, with a cooperative attitude, good eye contact, intact attention, normal speech, clear and logical thought process, and appropriate and full range of affect, full orientation, intact memory, and fair judgment and insight (Ex. 14F/2-3). The claimant reported that his mood was better at that time, and that he had been "going out more." Nurse Prendergast referred the claimant to therapy to help him reduce stress at that time. However, there is no evidence establishing that the claimant ever followed through with attending counseling or therapy of any kind since that referral (Ex. 14F/6).

After this appointment in February 2016, there is a gap of over two years in the claimant's psychological treatment records (Ex. 18F). The claimant's next documented appointment was not until March 2018 (Ex. 18F/3). At that time, the claimant reported only having had a "panic attack in Shop Rite a couple of weeks ago" and reported feeling sad "because he lost his job five years ago" (Ex. 18F/3). Upon mental status examination, treating psychiatrist Bruce Greene, D.O., objectively observed the claimant to have relevant and coherent speech, an appropriate affect, no delusions, denying suicidal ideation, and to be alert and fully oriented (Ex. 18F/4). Dr. Green diagnosed the claimant with panic disorder (episodic paroxysmal anxiety), and started the claimant on the anti-depressant Prozac, with a prescription for the anti-anxiety medication Klonopin to be taken on an as needed basis. (Ex. 18F/4). During the claimant's next appointment with Dr. Greene three weeks later, the claimant reported feeling "well" with "no panic." Upon mental status examination, Dr. Greene observed the claimant to have a neutral and stable mood, and again to be alert and fully oriented; he concluded in

13

his assessment that the claimant was "improving" (Ex. 18F/2). The record contains no other evidence of psychological treatment aside from these appointments two years apart since the claimant's amended alleged disability onset date.

Based on the limited evidence of psychological treatment and the largely normal objective and clinical findings therein, the undersigned finds that the claimant's medically determinable mental impairments of depression and an anxiety/panic disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe.

In making this finding, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders, known as the "paragraph B" criteria and finds that the claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: mild limitation in understanding, remembering, or applying information, mild limitation in interacting with others, no limitation in concentrating, persisting, or maintaining pace, and mild limitation in adapting or managing oneself[.] Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are non-severe (20 CFR 404.1520a(d)(l)).

R. 482–84. Accordingly, the ALJ properly relied on record evidence, not merely his lay opinion as Plaintiff suggests, *See Plaintiff's Memorandum of Law*, ECF No. 27, pp. 12–14, when assessing Plaintiff's mental RFC. *See Chandler*, 667 F.3d at 361 (stating that the ALJ makes the ultimate disability and RFC determinations). In the view of this Court, this record contains substantial evidence to support the ALJ's mental RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, argues that this mental RFC determination is not supported by substantial evidence because ALJ Ayers relied upon "admittedly outdated opinions[,]" failed to meaningfully develop the mental health opinion evidence, and "should have sought a consultative examination under 20 C.F.R. § 404.1519a(b)." *Plaintiff's Memorandum of Law*, ECF No. 27, pp. 13–15; *Plaintiff's Reply Brief*, ECF No. 29, pp. 2–3. In making this argument, Plaintiff contends that the state agency reviewing physicians and Dr. Friedman, the consultative

examiner, "obviously lacked access to timely evidence as they issued their opinions prior to the amended alleged onset date." *Id.* at 14. Plaintiff's arguments are not well taken. As a preliminary matter, state agency physicians are experts in Social Security disability programs. SSR 96-6p. "An ALJ may not ignore these opinions and must explain the weight given to them." *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003). An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler*, 667 F.3d at 361 ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available."). Accordingly, here, ALJ did not err when assigning great weight to the reviewing state agency physicians' opinions issued in May and July 2014, and to Dr. Friedman's opinion issued in May 2014 simply because additional medical evidence was later submitted. *See id.* Notably, Plaintiff fails to explain how any specific medical evidence later submitted, which simply reflects limited psychological treatment with improvement upon medication management, would result in a different mental RFC or an award of benefits. *See Plaintiff's Memorandum of Law*, ECF No. 27, pp. 13–15; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the

15

party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."). Moreover, "[s]imply because these opinions were rendered by state agency physicians who did not have a treating relationship with Plaintiff does not, as discussed in the aforementioned precedent, mean that the ALJ could not give them significant weight[.]" *Jones v. Colvin*, No. 3:14-CV-2337, 2016 WL 1071021, at *12 (M.D. Pa. Mar. 17, 2016); *cf. Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration").

To the extent that Plaintiff contends that ALJ Ayers failed to meaningfully develop the mental health record because ALJ Ayers did not order a consultative examination, that argument is not well taken. "ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted); *see also Crocker v. Comm'r of Soc. Sec.*, No. CV 15-8231, 2017 WL 1181584, at *4 (D.N.J. Mar. 29, 2017) ("[T]he ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof.'") (quoting *Lynn v. Comm'r of Soc. Sec.*, No. 12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013)). "The ALJ's only duty in this respect is to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled." *Money*, 91 F. App'x at 215 (citing 20 C.F.R. §§ 404.1512(d), 416.912(d)). "[W]here a claimant is represented by counsel before the ALJ, an ALJ's 'passivity in developing the record will only be sufficient for remand or reversal when it has clearly prejudiced the claimant.'" *Crocker*, 2017

WL 1181584, at *4 (quoting *Cartagena v. Comm'r of Soc. Sec.*, No. 10-05712, 2012 WL 1161554, at *4 (D.N.J. Apr. 9, 2012)).

In addition, an ALJ retains the discretion, but not the duty, to order a consultative examination. *See Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) ("The decision to order a consultative examination is within the sound discretion of the ALJ[.]"); *Woodside v. Berryhill*, No. CV 18-10, 2019 WL 4140993, at *1 (W.D. Pa. Aug. 30, 2019) ("As the decision to order a consultative examination is within the sound discretion of the ALJ, the Court finds that the ALJ did not err in finding that the record was sufficient to render a decision here without the need to order a consultative examination."); *Haganey v. Comm'r of Soc. Sec.*, No. CV 17-7944, 2019 WL 192901, at *2 (D.N.J. Jan. 15, 2019) ("Plaintiff cites to no Third Circuit case law or authority to support the argument that the ALJ was required to order the consultative examination. The record was sufficient for the ALJ to make a proper determination. Thus, the ALJ was not required to send Plaintiff for a consultative examination and acted within his discretion."); *Reliford v. Comm'r of Soc. Sec.*, No. CV 16-457, 2017 WL 2829604, at *9 (D.N.J. June 30, 2017) (rejecting the plaintiff's argument that the ALJ was required to order a consultative examination or recontact treating sources and stating that "Plaintiff is incorrect that the ALJ 'was under a duty' to further develop the record through any particular method"). For example, an ALJ may seek a consultative examination if the claimant's medical sources cannot or will not provide sufficient medical evidence, or in an effort to resolve an inconsistency in the evidence, or if the evidence as a whole is insufficient to make a determination. 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added); § 404.1519a(b) ("We

17

*may* purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.") (emphasis added), 404.1520b(b)(2)(iii) ("If the evidence in your case record is insufficient or inconsistent, we . . . *may* ask you to undergo a consultative examination at our expense") (emphasis added).

Here, to the extent that Plaintiff argues that ALJ Ayers erred in failing to order a consultative psychological examination because the record was inadequate as to Plaintiff's mental health, *Plaintiff's Brief*, ECF No. 27, pp. 14–15, that argument is not well taken. ALJ Ayers reasonably exercised his discretion in deciding that he had sufficient information to make a disability determination. R. 478–91. As an initial matter, Plaintiff was represented by counsel in the underlying administrative proceedings, including at the two hearings that ALJ Olarsch conducted on April 14, 2016, and July 25, 2018. R. 35–52, 633–91. Plaintiff's counsel never asked ALJ Olarsch to order a consultative examination or to keep the record open in order to obtain such an examination after Plaintiff advised at the second hearing that Plaintiff was amending his alleged disability onset date to May 12, 2015. R. 510–39. Moreover, in rendering his decision, ALJ Ayers detailed years of medical evidence, hearing testimony, and other evidence over several single-spaced typed pages, including an evaluation by a consultative examiner, evaluations by reviewing state agency medical consultants, and notes from treating mental health professionals, all of which reflected, *inter alia*, only sporadic psychological treatment and largely normal findings that did not support any greater mental limitations than those contained in the RFC. R. 482–84, 490. This Court finds that this record contained sufficient evidence regarding Plaintiff's mental impairments to permit the ALJ to make a disability determination. This Court therefore concludes that ALJ Ayers properly acted within

his discretion when he failed to order a consultative psychological examination. *See Money*, 91 F. App'x at 215; *Thompson*, 45 F. App'x at 149; *Haganey*, 2019 WL 192901, at *2; *see also Ali v. Comm'r of Soc. Sec.*, No. CV 17-12911, 2019 WL 3369694, at *6 (D.N.J. July 25, 2019) ("An ALJ has no duty to request commissioner sponsored examinations merely because existing records do not establish disability.") (citations omitted).

Plaintiff, however, insists that ALJ Ayers should have ordered a consultative psychological examination because Dr. Friedman's consultative psychological examination, which was the only such examination in the record, predated Plaintiff's amended alleged disability onset date of May 12, 2015. *Plaintiff's Memorandum of Law*, ECF No. 27, pp. 13–14. It is true that Dr. Friedman conducted his examination in May 2014, prior to Plaintiff's amended alleged disability onset date. R. 482, Although evidence that predates a claimant's alleged disability onset date is not entitled to any particular weight, an ALJ may nevertheless consider such evidence in considering the claim. *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 120 (3d Cir. Apr. 14, 2020); *cf.* 20 C.F.R. §§ 404.1512(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history *for at least the 12 months preceding the month in which you file your application* unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.") (emphasis added). Here, as previously discussed, ALJ Ayers specifically considered Dr. Friedman's examination and explained why he accorded "great weight" to this physician's clinical findings. R. 482, 490. The Court sees no error in ALJ Ayers' consideration of Dr. Friedman's examination and findings in this regard. Moreover, as this Court explained earlier, Plaintiff has not identified any specific evidence generated after Dr. Friedman's examination that would have resulted in a different mental RFC

19

or in an award of benefits. Based on this record and authority, then, the Court is not persuaded

that the fact that Dr. Friedman's examination predated Plaintiff's amended alleged disability

onset date required ALJ Ayers to order an additional consultative psychological examination.

*See Louis*, 808 F. App'x at 120; *Thompson*, 45 F. App'x at 149.

Finally, Plaintiff complains that ALJ Ayers failed to meaningfully develop the record

because ALJ Ayers never inquired about Plaintiff's September 2017 statement to Maris R.

Davis, M.D., that Plaintiff had been hospitalized for a mental illness after experiencing panic

attacks when Plaintiff had lost his job five years earlier. *Plaintiff's Memorandum of Law*, ECF

No. 27, pp. 13–14 (citing R. 916). Plaintiff further insists, in response to the Acting

Commissioner pointing out that the record contains no evidence of this hospitalization,

*Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 28, p. 12, that ALJ Olarsch never

asked about this hospitalization in the second administrative hearing and ALJ Ayers never

referred to this hospitalization—or to evidence of depression in Dr. Davis' May 2018 notes—and

that ALJ Ayers should have considered this evidence. *Plaintiff's Reply Brief*, ECF No. 29, pp. 2–

3. Plaintiff's arguments are not well taken. As previously discussed, Plaintiff, who was

represented by counsel in the underlying administrative proceedings, including at the

administrative hearings, bears the burden of developing the record in the first instance; the ALJ

need not search for all available relevant evidence. *See Money*, 91 F. App'x at 215; *Crocker*,

2017 WL 1181584, at *4. Notably, Plaintiff does not explain why his counsel could not have

requested and obtained records that purportedly reflect a psychiatric hospitalization. However, in

any event, as Plaintiff concedes*, Plaintiff's Reply Brief*, ECF No. 29, p. 2, the mere presence of

depression does not automatically translate into a disability. As detailed above, the ALJ

expressly noted that Plaintiff sought mental health treatment in February 2016 and again in

March 2018 when he reported that he was doing well. R. 483. The ALJ reasonably concluded that Plaintiff's sporadic mental health treatment and largely normal examination findings did not require greater mental limitations in the RFC. R. 490.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's mental RFC enjoy substantial support in the record.

### B.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of his subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 27, pp. 16−20; *Plaintiff's Reply Brief*, ECF No. 29, p. 3. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms). Finally,

an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v.

Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported

by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. §

416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a

sufficient basis for the ALJ's decision to discredit a witness.").[5]

     Here, ALJ Ayers followed this two-step evaluation process. ALJ Ayers specifically

considered Plaintiff's subjective complaints. R. 486−90. ALJ Ayers found that Plaintiff's

medically determinable impairments could reasonably be expected to cause symptoms, but that

---

[5]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term
"credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not
make statements about an individual's truthfulness, the overarching task of assessing whether an
individual's statements are consistent with other record evidence remains the same." *Levyash v.
Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 486. As previously discussed, ALJ Ayers detailed years of medical evidence and record testimony to support his findings. R. 482−84, 486−90. The ALJ also specifically noted that the medical evidence did not support the severity of Plaintiff's subjective complaints, explaining as follows:

> The medical evidence, as reviewed above, provides little objective support for the claimant's subjective complaints. Rather, the claimant's treatment records document a history of several chronic conditions, which were largely resolved prior to the claimant's amended alleged disability onset date, or have been significantly improved or controlled with medications or other forms of conservative treatment since that time. The undersigned notes that the claimant was consistently observed to have a normal gait throughout his treatment records and there is no evidence of any continuing limitations or treatment as a result of the claimant's history of lower extremity peripheral vascular disease since the claimant's amended alleged disability onset date, May 12, 2015. In addition, based on his reports to his medical providers, the claimant was still able to engage in some work activity at least three months after his amended alleged disability onset date, and was physically and mentally able to travel to and from Puerto Rico for a period of two weeks in February 2016. Because of the inconsistences between the claimant's subjective complaints and the objective medical evidence reviewed above, the claimant's subjective reports concerning his symptoms have been given little weight. The undersigned further notes that the claimant's reports of severe fatigue, dizziness, pain, and vertigo are also not objectively documented or confirmed in the record.

R. 488−89. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, argues that ALJ Ayers improperly considered Plaintiff's sporadic mental health treatment in light of the fact that Plaintiff told Dr. Greene that Care Plus was no longer providing him psychiatric services; he suggests that Plaintiff could not afford such care because of an "insurance issue." *Plaintiff's Memorandum of Law*, ECF No. 27, pp. 16, 18−19 (citing R. 698 (reflecting Dr. Greene's note memorializing Plaintiff's comment about Care Plus),

718). Plaintiff's argument is not well taken. As the Acting Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 28, p. 15, the cited record simply reflects that Plaintiff's insurance would not cover a particular medication—not that he had lost all insurance coverage. R. 718. In any event, ALJ Ayers sufficiently considered Plaintiff's mental health for the reasons previously discussed.

Plaintiff also challenges ALJ Ayers' consideration of Plaintiff's ability to engage in some work activity at least three months after the amended alleged disability onset date of May 12, 2015, and a trip to Puerto Rico in February 2016, contending that this activity did not establish that Plaintiff was capable of sustained work-related activity on a regular and continuing basis. *Plaintiff's Memorandum of Law*, ECF No. 27, pp. 19–20. However, ALJ Ayers did not conclude that this work activity and trip alone established that Plaintiff was not disabled. Rather, these activities were but two factors that ALJ Ayers considered when assessing Plaintiff's subjective statements and finding that the evidence did not fully support the severity of Plaintiff statements. *See* 20 C.F.R. § 404.1529(c)(3)(i) (providing that the ALJ may consider a claimant's daily activities); *see also Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The evidence from [the claimant's] doctors and the evidence regarding his daily activities . . . support the ALJ's finding with respect to [the claimant's] credibility."); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity. . . and was permitted to consider them to evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms.") (citations omitted); *Loneker v. Comm'r of Soc. Sec.*, No. CV 17-2006, 2018 WL 5784996, at *4 (D.N.J. Nov. 5, 2018) ("The ALJ's decision is consistent with the Third Circuit's recognition that "[a]lthough 'any statements of the

individual concerning his or her symptoms must be carefully considered,' the ALJ is not required to credit them," particularly where such statements are undermined by evidence of a more active lifestyle.") (quoting *Chandler*, 667 F.3d at 363).

For all these reasons, the Court concludes that ALJ Ayers sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and ALJ Ayers' findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn*, 717 F.2d at 873); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, ALJ Ayers' assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  October 27, 2021                  *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE